Syllabus.

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## NORFOLK SOUTHERN RAILROAD COMPANY v. NENA C. LEWIS, ADMINISTRATRIX, ETC.

January 19, 1928.

Absent, Burks, J.

1. EXCEPTIONS, BILL OF—*Error in Instructions—Stating Ground of Objection to an Instruction—Rule 22 of the Supreme Court of Appeals—Case at Bar.*—In the instant case the granting of a certain instruction by the trial court was assigned as error. The main purpose of this instruction was to instruct the jury in regard to the measure of damages, but in general terms it dealt with the right of recovery, stating that "to entitle the plaintiff to recover in this case, the defendant must be shown to have committed some act of negligence, proximately contributing to the injury." The objection urged in the trial court to this instruction and set forth in a bill of exceptions was that it was "too vague and indefinite as to the supposed negligence." On appeal it was urged that the language "some act of negligence" was too vague and indefinite.

   *Held:* That the bill of exceptions in nowise complied with Rule 22 of the Supreme Court of Appeals, which provides that an objection to an instruction shall state with reasonable certainty the ground of such objection.

2. EVIDENCE—*Negative and Positive Evidence—Refusal of Instruction that Negative Evidence is not as Strong as Positive Evidence—Case at Bar.*—The instant case was an action against a railroad for the death of a conductor. The negligence alleged against the defendant was the moving of its train backward upon the conductor without first receiving a signal from him. A witness testified that at the time of the accident he was looking at the conductor and that the conductor did not give a signal of any kind. This was a positive statement, that the signal to back the train was not given. The court refused to give an instruction at the request of defendant "that testimony of a witness that he did not see nor hear a signal is called negative evidence, and generally is not as strong as positive evidence of a witness that he did see or hear a signal."

*Held:* That there was no error in the action of the court in refusing this instruction. The court could not say as a matter of law that the witness, though contradicted by defendant's witnesses, was not in a position to observe whether or not the signal was given.

3. EVIDENCE—*Negative and Positive Evidence—Negative Statement Amounting to Positive Evidence.*—Testimony may be positive in character, although it amounts to a negative statement, and, if a witness who was in a position to observe testifies not merely that he did not see nor hear, but that the fact did not occur, this is clearly positive testimony.

4. MASTER AND SERVANT—*Assumption of Risk—General Rule.*—The rule of assumption of the risk is that an employee assumes all the ordinary risks incident to the employment. He also assumes such extraordinary risks as are plain and obvious. He does not assume risks arising from the master's negligence, or from the negligence of fellow servants (under the Federal employer's liability act), unless they are obvious, or he knows of them and appreciates them and continues in the service.

5. MASTER AND SERVANT—*Assumption of Risk—Death of Conductor—Signal not Given by Conductor—Case at Bar.*—The instant case was an action against a railroad for the death of a conductor. Deceased after throwing a switch stepped on the track in front of the train and proceeded leisurely down the track with his back to the train. Deceased did not give a signal to back the train, which nevertheless backed down upon him, killing him. The movement of the train according to the rules of defendant was under the sole control of deceased.

*Held:* That deceased did not assume the risk of defendant's negligence in the moving of the train without having first received a signal from deceased.

6. APPEAL AND ERROR—*Conclusiveness of Verdict—Credibility of Witnesses—Questions of Law and Fact—Case at Bar.*—The jury are the judges of the credibility of the witnesses and in the instant case, an action for the death of a conductor, if reasonably fairminded men could have any reasonable doubt whether or not the back-up signal was given by deceased, then the verdict of the jury for plaintiff is final and conclusive.

7. MASTER AND SERVANT—*Contributory Negligence—Question for Jury—Case at Bar.*—In the instant case a train conductor was killed by his train moving down upon him after he had thrown a switch and was walking down the track with his back to the train. The conductor had given no signal for the movement of the train and under the rules of the company the train was solely under his control.

*Held:* That the question of contributory negligence was for the jury, and, that the jury found plaintiff's intestate guilty of contributory negligence was evidenced by the small amount of damages awarded

plaintiff, and this finding was in conformity with section 5792 of the Code of 1919.

8. Master and Servant—*Contributory Negligence—Employees of Carriers.*—Under section 5792 of the Code of 1919 contributory negligence is no longer a bar to the recovery of damages for personal injuries by an employee of a carrier, but the damages may be diminished by the jury in proportion to the amount of negligence attributable to such employee.

9. Death by Wrongful Act—*Judgment—Specifying How Judgment for Recovery is to be Divided—Case at Bar.*—While in the instant case, an action for death by wrongful act, the circuit court erred in not specifying in the judgment how the recovery was to be divided among the widow and the two children of the deceased, as required by section 5788 of the Code of 1919, it did not appear that the question was raised in the trial court.

*Held:* That this was not such an error as would warrant the setting aside of the verdict and remanding the case for a new trial; but that the case would be remanded with direction that the trial court conform its judgment to the provision of the Code.

Error to a judgment of the Circuit Court of the city of Suffolk, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed and remanded.*

The opinion states the case.

*H. Stuart Lewis* and *Jas. G. Martin,* for the plaintiff in error.

*Saunders & Hutton,* for the defendant in error.

Campbell, J., delivered the opinion of the court.

The plaintiff in error, hereinafter called defendant, is here complaining of a verdict and judgment in the sum of $1,000, in favor of Nena C. Lewis, administratrix of William K. Lewis, deceased.

The plaintiff's intestate was, on the 16th day of May, 1925, and for many years prior thereto, an employee of the defendant in the capacity of conductor of the yard engine operated by the defendant on its yards in the city of Suffolk. The train crew, on the day in question, consisted of the conductor, fireman and two brakemen, who at the time of the accident were engaged in intrastate commerce. The engine with two cars attached to the front end and three cars attached to the rear end, moved backward in a northerly course over the main line of the defendant in the direction of the depot, and after "kicking" two of the cars attached to the rear of the engine up the main line for approximately one hundred and fifty yards, stopped, so that the remaining car at the rear of the engine stood on the main line with its northerly end a few feet from a switch; whereupon, plaintiff's intestate stepped off of the tender and went around the car over to the switch which was on the fireman's side of the engine, and threw the switch so that the remaining car on the rear of the engine could be moved on and over a pass, or side track, which extended in the same general direction of the main track.

The evidence upon the part of the plaintiff tends to show that after her intestate threw the switch, and without giving any signal to the engineer, or the fireman, or any one else, he stepped upon the track upon which the engine was standing at the intersection of the two tracks and a few feet ahead of the attached car, and walked slowly along the track, with his back to the engine, for about thirty feet, when he was struck by the moving train and killed.

The negligence relied upon by the plaintiff in her notice of motion, and relied upon at the trial, was the act of moving the train backward after the switch was

thrown by plaintiff's intestate, when no signal to do so had been given by him, which act, as alleged, was in violation of the defendant's rules and regulations, and was contrary to the daily practice and custom of the yard and of the crew in charge of the train.

The grounds of defense filed by the defendant were that the defendant was guilty of no negligence or fault; that Lewis, the deceased, himself signalled the train to back, and also the engine bell was rung; that the deceased caused the accident by his failure to keep a proper lookout; that deceased assumed the risk of such an accident.

[1] It is assigned as error that the trial court erred in granting instruction "A" on the motion of the plaintiff. This instruction is as follows:

"To entitle the plaintiff to recover in this case, the defendant must be shown to have committed some act of negligence, proximately contributing to the injury, and the court instructs the jury, if they find for the plaintiff, it is their duty to award such damages as to them may seem fair and just, not exceeding ten thousand ($10,000.00) dollars, and the court further instructs the jury if they shall believe from the evidence that the plaintiff's intestate was guilty of negligence which contributed to his death, the amount of damages shall be diminished by the jury in proportion to the amount of negligence attributable to the plaintiff's intestate, so that the plaintiff will not recover full damages, but only a proportional part, bearing the same relation to the full amount as the negligence attributable to the defendant bears to the entire negligence attributable to both the defendant and the plaintiff's intestate. But the negligence of the defendant, if any, must have a direct causal connection with the injury complained of."

In the oral argument and in the petition filed by the defendant it is urged that the language "some act of negligence" is too vague and indefinite; that it practically turned the jury loose to find the defendant guilty of any negligence, whether alleged in the notice or whether shown by the evidence.

In the trial court the objection urged to this instruction and set forth in Bill of Exceptions No. 2 is that "it is too vague and indefinite as to the supposed negligence." This objection is in no sense a compliance with Rule 22 of this court. *Levine* v. *Levine,* 144 Va. 330, 132 S. E. 320; *Keeney's Case,* 147 Va. 678, 137 S. E. 478; *Kelly* v. *Schneller,* 148 Va. 573, 139 S. E. 275.

In the midst of a heated trial conducted by able and learned counsel, the court is "turned loose" to find, if it can, without the aid of counsel, wherein the instruction is "too vague and indefinite." Passed for the protection of the trial court and to expedite the administration of justice, Rule 22 requires, amongst other things, that objection to an instruction shall be stated with reasonable certainty, and unless it appears from the record to have been so stated, such an objection will not be considered by this court, except for good cause shown, or to enable this court to attain the ends of justice. The language complained of is too general in its nature, but we have no doubt, had the specific objection now urged been called to the attention of the judge of the trial court, who is one of the most learned and careful trial judges in the Commonwealth, the error would have been corrected. As a matter of fact, while the instruction deals in general with the right of recovery, its main purpose is to instruct the jury in regard to the measure of damages.

The only act of negligence relied upon by the plaintiff was, as stated, the act of moving the train without first receiving a signal from the plaintiff's intestate. It also appears that, upon defendant's motion, the court gave this instruction: "The court instructs the jury that if they believe from the evidence that conductor Lewis signalled the train to back, it is the duty of the jury to find for the defendant."

[2, 3] The next assignment of error calls in question the action of the trial court in refusing the following instruction: "The court instructs the jury that testimony of a witness that he did not see nor hear a signal is called negative evidence, and generally is not as strong as positive evidence of a witness that he did see or hear a signal."

The evidence which this instruction sought to meet was that of the witness, F. M. Lewis, who witnessed the accident. After giving in detail an account of the accident the witness was further examined as follows:

"Q. As I understand from your testimony you were looking at Mr. Lewis when he threw the switch?

"A. Yes, sir.

"Q. Tell the jury whether or not Mr. Lewis gave any signal of any kind after throwing the switch.

"A. No; he didn't."

In Corpus Juris, Volume 23, page 41, it is said: "Testimony may be positive in character, although it amounts to a negative statement, and, if a witness, who was in a position to observe, testifies not merely that he did not see nor hear, but that the fact did not occur, this is clearly positive testimony."

There is no equivocation evidenced by the answer of the witness. It is a positive statement that the signal to back the train was not given. The witness placed himself in a position to see the action of the

deceased, there is nothing incredible in his statement, and, therefore, the court could not say as a matter of law that the witness, though contradicted by defendant's witnesses, was not in a position to observe whether or not the signal was given.

It is also assigned as error that the court erred in refusing to set aside the verdict of the jury as contrary to the evidence and without evidence to support it, and in not entering final judgment for defendant. This assignment of error involves, first, the question raised by the grounds of defense that plaintiff's intestate assumed the risk of such an accident as befell him.

[4] The rule of assumption of risk is admirably stated by Chichester, J., in *Davis* v. *Powell*, 140 Va. 665, 125 S. E. 756, as follows: "The rule of assumption of the risk, therefore, is that as employee assumes all the ordinary risks incident to the employment, he also assumes such extraordinary risks as are plain and obvious. He does not assume risks arising from the master's negligence, or from the negligence of fellow servants (under the Federal employer's liability act, [45 U. S. C. A. sections 51-59; U. S. Comp. St. sections 8657-8665]), unless they are obvious, or he knows of them and appreciates them and continues in the service."

[5] If the evidence warrants the finding of the jury that the defendant was negligent in the movement of the train which caused the death of plaintiff's intestate, the doctrine above stated, that an employee does not assume risks arising from the master's negligence, applies.

The witness, Lewis, testified that the deceased did not give a signal to back the train, that after he threw the switch he stepped on the track in front of the

train and proceeded very leisurely down the track and did not appear to have any knowledge that the train was approaching. While the evidence is not positive on the question, an explanation of why the deceased, after throwing the switch, immediately stepped upon the track in front of the train is fairly inferable from the testimony of the brakeman, Hicks. The pertinent portion of this evidence is as follows:

"Q. The two cars were kicked on the main line, as I understand?

"A. Yes, sir.

"Q. Did you give any signal for the train to come back?

"A. No, sir.

"Q. Had your work been mapped out for you as to what you were going to do after you rode these cars down there and broke them?

"A. Yes, sir.

"Q. What were you going to do?

"A. It was his instructions for me to ride these two cars down the main line and he was going to throw another one up the pass track and I was going to walk across to stop that.

"Q. Then you were going to get off the two cars you were braking and walk across the pass track?

"A. Yes, sir.

"Q. And catch this car as it came down the pass track?

"A. Yes, sir.

"Q. Captain Lewis was going to throw this car?

"A. Yes, sir.

"Q. Was there anybody else up there to do it but him?

"A. No, sir."

Unless the deceased was lost to all sense of danger or

intended to commit suicide, the inference that he knew Hicks was not in a position to board the car which deceased had informed him would be thrown or kicked onto the sidetrack, and that deceased was waiting for him to get into a position where he could catch the car in question, before he gave the signal to back up, seems to be clear.

According to the rules of the defendant, the movement of the train was under the sole control of the deceased. Possessed of this knowledge, if the deceased, as the jury found, did not give the back-up signal, he had the right to assume that the train would remain stationary until he crossed the track, saw that Hicks was in proper position, and gave the engineer the signal to move the train.

While it takes minutes to narrate the occurrence, it appears that only a few seconds elapsed between the throwing of the switch and the accident. While the evidence discloses that the bell was rung while the train was moving twenty-eight or thirty feet, this does not absolve the defendant from its negligence in moving the train without a signal. The dangers in connection with the operation of a railroad yard are so numerous that it is essential that the movements of the engine should be regulated by signals. To the conductor of the yard was entrusted this responsibility. There being positive evidence that he did not give the only signal upon which the engineer or fireman could rely in the movement of the train, it cannot be said as a matter of law in this case that the plaintiff's intestate assumed the risk of the master's negligence in moving the train without first having received from him a signal so to do.

Two witnesses, testifying for the defendant, stated that plaintiff's intestate did give the signal for the

train to back up and then immediately stepped in front of the oncoming train and was killed. One of the witnesses, Hurlburt, was the companion of the witness, Lewis, at the time of the accident. He was not in any more favorable situation than Lewis was in regard to the accident. His evidence was of a contradictory nature. When first interviewed he was in doubt whether the movement of the hand on the part of plaintiff's intestate was a signal or a natural movement. Alex. Simms, the colored fireman, testified positively that the back-up signal was given. If the signal was not given, the responsibility for the death of Lewis rested upon Simms, for it was he who gave the engineer the signal to back the train.

[6] The jury are the judges of the credibility of the witnesses and if reasonably fairminded men could have any reasonable doubt whether or not the back-up signal was given, then the verdict of the jury is final and conclusive. *W. S. Forbes & Co.* v. *Southern Cotton Oil Co.*, 130 Va. 245, 108 S. E. 19; *Gregory* v. *Seaboard Air Line Ry. Co.*, 142 Va. 750, 128 S. E. 272.

[7, 8] It is also contended by defendant that plaintiff's intestate was guilty of contributory negligence, which was the sole proximate cause of the accident. Under the facts and circumstances set forth, *supra*, the question of the contributory negligence of plaintiff's intestate was for the jury. That the jury found plaintiff's intestate guilty of contributory negligence is evidenced by the amount of damages awarded. This finding is in conformity with the provisions of section 5792 which provides that "the fact that such employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

Upon this statute was based instruction "A," *supra,* which told the jury "if they shall believe from the evidence that the plaintiff's intestate was guilty of negligence which contributed to his death, the amount of damages shall be diminished by the jury in proportion to the amount of negligence attributable to the plaintiff's intestate   *   *   *.' "

[9] It is also assigned as error that the circuit court erred in not specifying in the judgment how the recovery is to be divided among the widow and the two children of the deceased, as required by section 5788 of the Code. It does not appear that this question was raised in the trial court. While it was error to attempt to enter judgment upon the verdict of the jury without strictly complying with the statute, it is not such an error that warrants the setting aside of the verdict and remanding the case for a new trial. The record discloses that the widow, a son and a daughter composed the family of the deceased. This being shown, the case will be remanded to the circuit court with the direction that it conform its judgment to the provisions of section 5788 of the Code. In all other respects the case will be affirmed.

*Affirmed and remanded.*