# CIRCUIT COURT OF FAIRFAX COUNTY

In re November 20, 2013,
Decision of the
Board of Zoning Appeals
of Fairfax County

December 1, 2014

Case No. CL-2013-18953

BY JUDGE MICHAEL F. DEVINE

This matter is before the Court on the Petition for Writ of Certiorari filed pursuant to Va. Code § 15.2-2314 by the Petitioner, The Girl Scout Counsel of the Nation's Capital ("The GSC" or "the Petitioner"). The GSC appeals the November 20, 2013, decision of the Board of Zoning Appeals of Fairfax County ("the BZA") in which the BZA overturned the determination of the Fairfax County Zoning Administrator ("the Administrator") that the proposed addition of a storage facility or warehouse on The GSC's property is part of the existing public benefit use and not a separate principal use. Under the Administrator's determination, the Fairfax County Board of Supervisors could approve construction of the storage facility as part of The GSC's pending Special Exception Amendment application. Under the BZA's decision, the storage facility could not be approved as part of the Special Exception Amendment. Instead, a new special exception would have to be requested. The County Attorney, who took no position on the merits of the Petition, stated at the hearing in this matter that the Board of Supervisors would not consider approving construction of the storage facility if it were determined that the facility was not within the existing public benefit use.

The Petitioner raises three alternative grounds for its appeal of the BZA's decision. First, the Petitioner claims that the decision of the BZA is void because the Respondents are not aggrieved parties and thus had no right of appeal to the BZA pursuant to Va. Code § 15.2-2311(A). The Respondents are homeowners whose properties either adjoin The GSC's property or adjoin the road used to access the property. Second, the Petitioner claims

that, even if the BZA had the authority to overturn the Administrator, the Respondents cannot pursue their appeal in this Court because they are not aggrieved within the meaning of Va. Code § 15.2-2314. Lastly, the Petitioner claims that the BZA's decision was wrong as a matter of law.

The Respondents argue that the Petitioner procedurally defaulted on its first claim by failing to raise a contemporaneous objection before the BZA. The Respondents also argue that because Va. Code § 15.2-2314 requires only the party making the appeal to the circuit court to be aggrieved, the Respondents do not have to show that they are aggrieved. Nevertheless, the Respondents argue that they are aggrieved.

Upon consideration of the written and oral arguments by the Petitioner and the Respondents and for the reasons that follow, the Court holds that the November 20, 2013, decision of the BZA is void because the Respondents are not aggrieved and thus had no right to appeal the Administrator's determination to the BZA. The Court, therefore, need not consider the Parties' other arguments.

### Background

A. *The Property and Its Development*

The GSC owns 67 acres of real property between Vale Road and Justin Knoll Road, in Oakton, Virginia, known as Camp Crowell. The property is zoned R-E, which permits agricultural and low density, single family residential uses and other selected uses which are compatible with the open and rural character of the district. Fairfax County Zoning Ordinance, 3-E00 *et seq*. (February 11, 2014).

In 1981, the Fairfax County Board of Supervisors approved a Special Exception for the use of the property as a public benefit association. A "public benefit association" is an establishment of a private nonprofit organization . . . which provides social, physical, recreation, educational, agricultural, or benevolent services." Fairfax County Zoning Ordinance, 20-300. A public benefit association is prohibited from carrying on a trade or business, but may have paid employees. *Id*. The property is developed with two lodges, picnic shelters, cooking shelters, campsites with camp shelters, a low ropes course, latrines, a service drive, and parking facilities. The 1981 Special Exception also approved construction of a new lodge, a caretaker's house, an amphitheater, and an additional campsite; however, these amenities were not constructed. In 1991, the Board amended the Special Exception to allow for relocation and reduction in size of the new lodge and to increase maximum attendance capacity to 550 persons during peak summer use.

B. *Administrative Proceedings on the Application for a Special Exception Amendment*

In 2013, The GSC filed an application to again amend the Special Exception to add a storage facility and to increase the occupancy of the camp by fifty campers. The proposed storage facility would encompass 6,000 square feet and would be 26 feet in height. It would be used to store camping gear, program materials, and other items used at Camp Crowell and seven other Girl Scout camps. It is anticipated that, during the summer months, a box truck would access the storage facility on Mondays and Fridays. During the remainder of the year, a van would make approximately six trips per day.

On June 14, 2013, The GSC made a request for the Administrator to determine whether the storage facility would be considered part of the existing public benefit association use. On June 28, 2013, the Respondents, by counsel, requested the Administrator to determine that the storage facility was a warehousing establishment and not accessory to The GSC's existing use. On July 18, 2013, the Administrator issued a letter finding that the storage facility "is part of the public benefit use and not a separate principal use and, therefore, could be approved by the Board [of Supervisors] in conjunction with the pending SEA [special exception amendment] application. As part of the SEA review process, the Board will consider the impacts . . . on adjacent properties, including any transportation, environmental, and visual impacts, and may impose development conditions that would help mitigate any adverse impacts. . . ." The Respondents appealed to the BZA. Upon written submissions by the Parties and a hearing before the BZA, the BZA overturned the Administrator's determination.

C. *Proceedings in the Circuit Court*

The GSC then filed its Petition for Writ of Certiorari with this Court, pursuant to Va. Code § 15.2-2314. The Petitioner served the County Attorney, but initially did not serve the Respondents with its Petition. The GSC initially claimed that the Respondents need not be served because they were not aggrieved parties and were also not necessary parties under Va. Code § 15.2-2314. On July 31, 2014, the date set for hearing on the Petition, some of the Respondents appeared *pro se* to object to their not being served and moved the Court for leave to intervene. The Court requested briefs and scheduled argument on the motions to intervene for September 12, 2014. Before that hearing could occur, the Petitioner served all of the Respondents who had appealed to the BZA. On September 12, 2014, the Court invited further briefing from all of the parties and conducted a hearing on the Petition on November 13, 2014.

*Analysis*

Appeals to the BZA are governed by Va. Code § 15.2-2311, which states in relevant part:

> § 15.2-2311. *Appeals To Board*. A. An appeal to the board may be taken by any person aggrieved or by any officer, department, board or bureau of the locality affected by any decision of the zoning administrator or from any order, requirement, decision, or determination made by any other administrative officer in the administration or, enforcement of this article, [or] any ordinance adopted pursuant to this article. . . .

Thus, by the plain language of the statute, the Respondents cannot appeal the Administrator's determination to the BZA unless they are aggrieved.

Before deciding whether the Respondents are aggrieved parties, the Court must first determine whether the Petitioner's claim that the Respondents had no right of appeal to the BZA is barred because that argument was not raised before the BZA. The Respondents argue that the Petitioner has waived or procedurally defaulted this claim based upon "[a] basic principle of appellate review . . . that, with few exceptions . . . arguments made for the first time on appeal will not be considered." *Martin v. Ziherl*, 269 Va. 35, 39, 607 S.E.2d 367, 368 (2005). The Respondents assert that this rule should apply equally in this proceeding, because it is "consistent with the circuit court's limited function in these proceedings. . . ." Respondents' Brief In Opposition To Petitioner's Second Brief at 5. The Court disagrees and finds that the Petitioner's claim is not waived or procedurally defaulted.

First, appeals from circuit courts to the Court of Appeals or the Supreme Court are governed by the Rules of the Supreme Court of Virginia that expressly preclude consideration of an issue on appeal "unless an objection was stated with reasonable certainty at the time of the ruling. . . ." Va. S. Ct. Rules 5:25, 5A:18 (2014). No similar rule or statute applies to a circuit court's review of a decision of a Board of Zoning Appeals pursuant to Va. Code § 15.2-2314. Second, a proceeding under Va. Code § 15.2-2314 is so unlike true appellate review, such as from a trial court to the Supreme Court of Virginia, that application of a contemporaneous objection rule is not appropriate. The most striking difference between a true appeal and this proceeding is that, pursuant to Va. Code § 15.2-2314, any party has the right to introduce new evidence. Thus, unlike a true appeal, which is limited to a review of the record made below, each party in a proceeding under Va. Code § 15.2-2314 can introduce additional evidence and respond to arguments made for the first time in the circuit court. None of the reasons that support the appellate courts' application of a contemporaneous objection rule apply in the proceeding now before this Court.

The reasons for the contemporaneous objection rule cited by the Supreme Court and the Court of Appeals include "to put the record in such shape that the case may be heard in [the appellate] court upon the same record upon which it was heard in the trial court. . . ." *Kercher's Adm'r v. Richmond, Fredericksburg & Potomac RR.*, 150 Va. 108, 115, 142 S.E. 393, 395 (1928); "the protection of the trial court. . . ." *Norfolk S. RR. v. Lewis*, 149 Va. 318, 323, 141 S.E. 228, 229 (1928); "the purpose of preventing the setting of traps for trial courts, *Keeney v. Commonwealth*, 147 Va. 678, 690, 137 S.E. 478, 482 (1927); "in order that the trial judge could rule intelligently and avoid unnecessary appeals, reversals, and mistrials" *Woodson v. Commonwealth*, 211 Va. 285, 288, 176 S.E.2d 818, 820 (1970); "to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials;" *Fisher v. Commonwealth*, 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988), cert. denied, 490 U.S. 1028, 109 S. Ct. 1766, 104 L. Ed. 2d 201 (1989); "so that the opposing party may have an opportunity to meet the objection," *Hilton v. Fayen*, 196 Va. 860, 866, 86 S.E.2d 40, 43 (1955).

By allowing any party to introduce additional evidence in the circuit court, the General Assembly intended that the circuit court's decision would not be limited to the same record as before the BZA. In this respect, an appeal under Va. Code § 15.2-2314 resembles a trial *de novo* more than a true appeal. Therefore, the Court rejects the Respondents' argument that the Petitioner has waived or procedurally defaulted on its claim that the Respondents have no right to appeal the determination of the Administrator to the BZA.

Turning now to the substance of the Petitioners' claim, the Court must determine whether the Respondents are aggrieved as that term is used in Va. Code § 15.2-2311. As agreed by both the Petitioner and the Respondents in their briefs, to be aggrieved a person must suffer "denial of some personal or property right, legal or equitable." *Vulcan Materials Co. v. Board of Supervisors*, 248 Va. 18, 24, 445 S.E.2d 97, 100 (1994) (internal quotation omitted). Both parties likewise agree that *Friends of the Rappahannock v. Caroline County Bd. of Supervisors*, 286 Va. 38, 743 S.E.2d 132 (2013), provides the proper framework for analysis.

In *Friends*, the Supreme Court held that a party challenging a land use decision who claims no ownership interest in the subject property can be aggrieved and thus have standing to raise the claim, only if it can satisfy a two-step test. ("[A]ny distinction between an `aggrieved party' and justiciable interest is a distinction without a difference. . . ." *Friends*, 286 Va. at 48, 743 S.E.2d at 137.) "First, the complainant must own or occupy real property within or in close proximity to the property that is the subject of the land use determination. . . . Second, the complainant must allege facts demonstrating a particularized harm to some personal or

property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally." *Id.* at 48, 743 S.E.2d at 137. "Absent an allegation of injury or potential injury not shared by the general public" a complainant is not aggrieved and thus cannot challenge the land use decision. *Id.* at 49, 743 S.E.2d at 137.

In *Friends,* the individual complainants challenged a decision by the Caroline County Board of Supervisors to permit development of a sand and gravel mining operation on land bordering the Rappahannock River, subject to thirty-three conditions. *Id.* at 42, 743 S.E.2d at 133. The individual complainants were the owners and the leaseholder of adjacent lands and landowners who lived across the river from the proposed operation. The complainants from the adjoining lands complained that the noise and industrial activity from the proposed mining operation would frighten away wildlife and render their property useless for hunting, as well as make it more difficult to find tenants for a farmhouse on one property. The complainants from across the river complained that the activities would destroy the scenic beauty of the location and that increased noise, dust, and river traffic would alter their quiet enjoyment of the area, as well as negatively affect human health. *Id.* at 42-43, 743 S.E.2d at 133-34.

The Supreme Court held that the individual complainants in *Friends* failed to establish any facts showing "that the proposed mining operation would cause sufficient noise, particulate matter, or pollution off site to cause actual harm. . . . The individual complainants do not allege any facts to indicate that the conditions imposed by the permit would be inadequate to protect their property rights." *Id.* at 49-50, 743 S.E.2d at 138. The individual complainants thus could not challenge the decision of the Board of Supervisors to permit the operation.

Applying the holding in *Friends* to the facts of this case, it is undisputed that each of the Respondents is within sufficient proximity to The GSC's property to have "a direct, immediate, pecuniary, and substantial interest in the decision" so as to satisfy the first step of the *Friends* test. *See id.* at 48, 743 S.E.2d at 137 (internal quotation omitted). The Respondents concede, as they must, that this interest, standing alone, is not enough to allow their claim to proceed. The Respondents claim that they satisfy the second step of the *Friends* test because the Administrator's determination that the proposed storage facility is part of the existing public benefit use has caused them particularized harm. Specifically, the Respondents claim that the decision changed the nature of their residential neighborhood from one where warehouses are prohibited to one where warehouses are permitted. As a result, the Respondents must now remain vigilant and participate in the process by which the Board of Supervisors may give final approval to such a use, costing them time, money, and anguish. The Respondents further claim harm from the visual impact of the warehouse structure, the increased traffic flow on their street, and increased noise from

truck deliveries and operation of the warehouse. The Court finds the harms claimed are speculative or do not implicate a personal or property right and thus are insufficient to render the Respondents aggrieved as that term is used in Va. Code § 15.2-2311.

The Court finds that the Respondents' claimed harm is speculative for two reasons. First, the decision of the Administrator did not constitute approval of the proposed warehouse. The Administrator merely gave her interpretation that the proposal was within the existing public benefit use, which meant the Board of Supervisors could consider the proposal as part of the Special Exception Amendment filed by The GSC. The Administrator's determination did not authorize any changes in the existing use of the property. The power to approve, modify, or reject the proposed warehouse rests entirely with the Board of Supervisors, which has not yet acted. Thus, the Administrator's determination cannot result in any harm to the Respondents. There is no change in the "nature of their neighborhood" simply because the Board of Supervisors can consider a proposed development that the Respondents did not anticipate. Second, until the Board of Supervisors actually approves the proposed warehouse and the conditions imposed upon its construction and operation are known, it is impossible to know what harms, if any, might result.

The other harms claimed by the Respondents are not cognizable personal or property rights. To the extent the Administrator's determination caused a change in the Respondents' subjective feelings about their neighborhood or its future prospects, such a change does not constitute a cognizable personal or property right. Likewise, the exercise of one's right to participate in the political or administrative process cannot be deemed harmful to that right or any other cognizable personal or property interest.

### Conclusion

For the foregoing reasons, the Court holds that the Respondents are not aggrieved as that term is used in Va. Code § 15.2-2311. Consequently, the Respondents had no right to appeal the determination of the Administrator to the Board or Zoning Appeals. Therefore, the BZA's decision overturning the Administrator's determination is declared void.