# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## STANSBURY v. CITY OF RICHMOND.

### March 12, 1914.

### Absent, Cardwell, J.

1. MUNICIPAL CORPORATIONS—*Discretionary Powers—Water System·—Negligence.*—A municipality in devising plans and systems for supplying the public with water, sewerage and the like exercises legislative duties involving the use of judgment and discretion, and ought not to be held liable to civil actions for defects or want of efficiency of plan, at least during the formative or experimental stage of the enterprise; but, after the work has been completed and experience has demonstrated that the system is inadequate and inefficient to meet the requirements, or to effect the objects for which it was intended, there can be no reason to exempt it from damages suffered by an individual from its continued use.

2. MUNICIPAL CORPORATIONS—*Failure to Supply Water—Constitutional Law—Due Process—Equal Protection.* — A person who builds a dwelling and equips it with water pipes, bath tubs, closets, etc., is not deprived of his property without "due process of law" nor denied the equal protection of the law by a failure of the city in which he resides to furnish him an adequate supply of water for a short while, though required by the city to connect with its water supply.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*C. W. Throckmorton* and *Samuel A. Anderson*, for the plaintiff in error.

*H. R. Pollard,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

This action was brought to recover damages for the alleged negligent failure of the city of Richmond to furnish the plaintiff with a sufficient supply of water for domestic and sanitary purposes. The defendant interposed a demurrer to the evidence, which the court sustained, and to that judgment this writ of error was granted.

In December, 1906, the city of Richmond annexed a large area of territory in which Temple street, on which the plaintiff resides, is located. The water department at great expense laid water mains along Temple street for the convenience of citizens in that locality, even before the street had been graded. In December, 1911, after the system was installed, the board of health notified the plaintiff to connect his premises with the water main and sewer pipes, which he did in January, 1912. Experience showed that while the pressure was sufficient to supply the plaintiff with water on the first floor of his dwelling, the quantity of water on the second floor was insufficient to flush his closet, and the original supply was so diminished from time to time as other buildings were connected with the main, that in about one month he got no water at all for his bath room. He thereupon reported these facts to the authorities and suggested that his premises be connected with a stand-pipe intended to supply water to the inhabitants of an adjoining district, but his request was not immediately granted, the authorities assigning as the reason for their refusal that the district was growing so fast that the proposed diversion of water would render the supply inadequate for those the stand-pipe was originally intended to serve.

The present action was instituted on July 18, 1912. A few days later a petition signed by the plaintiff and other residents of that locality was presented to the chairman of the water committee calling attention to the fact that the pressure was insufficient to flush second-floor closets, and requesting that action might be taken to remedy the defect. The committee immediately directed that the water main on Temple street be connected with the end of the pipe at Allen avenue and Cary street, which was done four days thereafter, and by that means the evil complained of was corrected.

It is apparent from the foregoing summary of the evidence that if we should sustain a recovery in this case it would rest solely upon the theory that the city had rendered itself liable in damages for the negligent adoption of a system of water supply for the section of the newly acquired territory wherein the plaintiff resides. That there can be no such liability under the circumstances of this case is very clear. The adoption of a plan for supplying a city, or a given section of it, with water involves the exercise of a delegated governmental power; and an error of judgment with respect to the efficiency and adequacy of such system is not in the first instance reviewable by the courts.

On the other hand, it is equally well settled that the city is liable, in a proper case, for the negligent acts and omissions of its officers in relation to the performance of such ministerial corporate duties as may be imposed upon it by law. This line of demarcation between the non-liability and liability of a municipal corporation for official negligence is well recognized by the authorities, including the decisions of this court.

Thus, in *Terry* v. *Richmond,* 94 Va. 537, 27 S. E. 429, 38 L. R. A. 834, Judge Riely, upon a review of the earlier decisions, at page 544, *et seq.,* observes: "A num-

ber of cases decided by this court, in which the munici-
pality was held responsible, were cited and relied on to
support the claim of liability of the city in the case at
bar, but they do not support the contention of the plain-
tiff in error. 'The liability in those cases rested upon a
different ground from that which underlies this case.
Its solution depends upon the application of a different
principle. The act of the city which is the subject of the
complaint here, was the exercise of a delegated govern-
mental power, but it will be found upon examination that
the liability in each and all of the cases referred to was
based either upon a tort committed by the city itself
through its officers or agents, or upon the neglect of the
city to perform some ministerial and absolute duty.''
The learned judge illustrates the general doctrine as
follows: ''The duty of a municipal corporation to see
that its streets and sidewalks are in safe condition, and
that its sewers and drains are kept in good order, and
that its other like municipal obligations are cared for,
is a purely ministerial and absolute corporate duty, as-
sumed in consideration of the privileges conferred by
its charter, and the law holds the municipality responsi-
ble for an injury resulting from the negligent discharge
of such duty, or the negligent omission to discharge it,
but it exempts it from liability for the exercise of gov-
ernmental or discretionary powers.''

We have quoted at some length from Judge Riely's
opinion for the reason that the principles involved are
lucidly stated, and have been consistently followed by
this court in subsequent decisions, and also because they
are conclusive of the present controversy.

In the light of the opinion of Mr. Justice Gray, in
*Johnston* v. *District of Columbia,* 118 U. S. 19, 6 Sup. Ct.
923, 30 L. Ed. 75, there can be no difficulty in appropri-
ately classifying the case in judgment. At pages 20-21,

he says: "The duties of the municipal authorities, in adopting a general plan of drainage, and determining when and where sewers shall be built, of what size and at what level, are of a *quasi* judicial nature, involving the exercise of deliberate judgment and large discretion, and depending upon considerations affecting the public health and general convenience; and the exercise of such judgment and discretion, in the selection and adoption of the general plan or system of drainage, is not subject to revision by a court or jury in a private action for not sufficiently draining a particular lot of land."

Judge Dillon, in the last edition of his work on Municipal Corporations, after laying down the general principle above set forth, observes: "We now add that the later cases tend strongly to establish, and may, we think, be said to establish, and in our judgment rightly establish, that a city may be liable on the ground of negligence in respect of public sewers, solely constructed and controlled by it, when by reason of their insufficient size, clearly demonstrated by experience, they result under ordinary conditions in overflowing the private property of adjoining or connecting owners with sewage, and that the principle of exemption from liability for defect or want of efficiency of plan does not . . . extend to such a case." 4 Dillon Mun. Corp., sec. 1739.

This very important qualification to the non-liability doctrine is founded upon common sense and considerations of sound policy and accords with the trend of modern thought and decision.

As we have seen, the municipality in devising plans and systems for supplying the public with water, sewerage and the like, exercises legislative duties involving the use of judgment and discretion, and it ought not to be held liable to civil actions for defects or want of efficiency of plans, at least during the formative or experi-

mental stage of the enterprise; yet, after the work has been completed, and experience has demonstrated that the system is inadequate and insufficient to meet requirements or to effect the objects for which it was intended, there can be no reason to exempt the municipality from damage suffered by an individual from its continued use.

The author (Judge Dillon) in notes to section 1739, and subsequent sections cites numerous cases to sustain the text.

In the instant case, the city with commendable promptitude took the necessary steps to furnish the plaintiff and other citizens similarly situated with additional water facilities after experience had shown the insufficiency of the original supply; and there has been nothing in connection with the discharge of its duty in that regard to subject it to a suit for damages.

We are told in the second and third assignments of error that the judgment complained of deprived the plaintiff of his property without due process of law and denied him the equal protection of the law, in violation of the fourteenth amendment of the Constitution of the United States and section 11, Art. I, of the Virginia Constitution; but those assignments are founded upon a misapprehension of the evidence. It is true the plaintiff expended $160.00 in installing fixtures on his premises, but of this property he has in no just sense been deprived. The fixtures have never been out of his ownership or possession, and through that medium at the date of the judgment he was utilizing and enjoying the ample supply of water furnished him by the city.

Upon the whole case, we find no error in the judgment of the Law and Equity Court of the city of Richmond, and it must be affirmed.

*Affirmed.*