# 𝔚𝔭𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

CITY OF NORFOLK, A MUNICIPAL CORPORATION V.
MATTYE S. HALL.

June 10, 1940.

Record No. 2243.

Present, All the Justices.

546

The opinion states the case.

*Alfred Anderson* and *Jonathan W. Old, Jr.*, for the plaintiff in error.

*James G. Martin & Son*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is an action by notice of motion for damages for personal injuries suffered by Mrs. Mattye S. Hall, and alleged to have been caused by the negligence of the city of Norfolk, a municipal corporation, in improperly constructing one of its streets, and in knowingly permitting it to remain in an unsafe condition, by reason of which Mrs. Hall was injured while being driven thereover in an automobile.

Mrs. Hall was awarded the sum of $2,500 by a jury. The amount of the award is not in question.

The trial court refused to set aside the verdict as being contrary to the law and the evidence.

The city assigns error to the refusal of the trial court to strike the plaintiff's evidence at the conclusion of all the evidence, to its refusal to set the verdict aside and enter judgment for the city and to the granting and refusing of certain instructions.

The answer to the principal question, whether or not there was sufficient evidence to justify a finding that the city was guilty of negligence in the maintenance of its street, is decisive of this case.

Under our familiar and well established rule, when a jury's verdict has been approved by a trial court, this question is answered by considering only so much of the evidence as is favorable to the prevailing party. If that evidence is credible and sufficient to sustain the verdict, it is not to be discredited merely because of contradictions. The contradictions have been resolved by the jury, the sole judges of the credibility of the witnesses, against the unsuccessful party. Considered from this viewpoint, the evidence showed the following facts:

On June 29, 1938, in the daytime, Mrs. Hall, M. I. Hall, her husband, and Mr. and Mrs. Louhoff were passing through Norfolk, in an automobile on their way from Danville, Virginia, to Virginia Beach, Virginia. Mr. Hall, who was not familiar with the streets of Norfolk, was driving his Packard sedan northwardly on Bank street at a speed estimated at eighteen to twenty miles an hour. At the time they crossed Charlotte street, which runs east and west and

intersects Bank street at right angles, the car bounced severely due to two depressions or dips, which had been built into the pavement to facilitate the drainage of surface water. The first depression or drain started the car bouncing and the second one increased its violence. These depressions or dips, described as being "V" shaped, crossed the southerly and northerly lines of the intersection of Bank street with Charlotte street, and were the continuation of the surface drains or gutters, adjacent to and following the course of the southerly and northerly curb lines of Charlotte street.

Mrs. Hall was thrown upward and off the back seat to the floor of the car, and suffered a fracture of her spinal column. Mrs. Louhoff, who was also riding in the back seat, suffered a severe bump on her head.

Before this accident, the two drains across Bank street had caused other cars to bounce severely and, in several instances, to break springs. This was evident enough to cause the operator of a near-by service station to report the condition of the street to the office of the city manager of Norfolk. Sometime after this accident, the paving at the intersection was altered and the depth of these depressions was reduced.

Mr. Hall and Mr. Louhoff drove over this intersection twice after the date of their accident for the purpose of determining the condition of the drains and the extent of the bounce of a car at a given speed.

The first test was made prior to the time the city made the alteration to the surface of the street, and, at that time, they found that a person would be thrown from the back seat of a car driven at a speed of approximately fifteen miles per hour. In the test made after the alteration, they found that the bouncing motion of the car was materially reduced.

Although the asphalt surface was not broken, Mr. Louhoff described the condition of the dip or depression on the right-hand side of Bank street, adjacent to the northeast corner of the intersection, as being "to an extent" a hole

"which was hollowed out," or "rounded out," but which did not extend entirely across Bank street.

The jury was taken to the scene of the accident and viewed the premises.

The defendant showed that the general topography of the city of Norfolk and its nearness to sea level had made surface drainage the most satisfactory system of street drainage; that its city engineer, in constructing these drains, sometimes called "valley gutters," had followed a standard, uniform plan of construction and had, originally, properly designed and completed them; and that the bottom of the southerly gutter crossing Bank street was four and one-quarter inches lower than the center line of the street, and the bottom of the northerly gutter five inches lower.

The evidence presented by the defendant in respect to the condition of the street and the contour of the gutter on the day of the accident, the effect on cars driven across the intersection at certain speeds, the knowledge of the city of any previous accidents at this point, repairs made to the street or need of repairs, and the rate of speed permissible in the district wherein the accident occurred, was in direct conflict with that of the plaintiff.

The city first contends that the sole proximate cause of the injuries to the plaintiff was the rate of speed at which the automobile in which she was riding was being driven over the drains. This contention was answered adversely to the city by the jury.

The city also contends that if the jolts to the automobile were caused by the drains across the street no negligence can be charged against the city therefor, because the drains were necessary under existing conditions and were constructed according to reasonable plans adopted by the city in its governmental capacity. In support of this position, it cites and relies upon numerous cases which hold that a municipal corporation, in the adoption of a plan for improvements of its streets, acts in its legislative capacity for governmental purposes, and is not liable for errors committed in the exercise of its discretion in that capacity. *Black-*

*welder* v. *City of Concord,* 205 N. C. 792, 172 S. E. 392, 90 A. L. R. 1495, and cases cited in Annotation on "Liability of municipality for injury to person or property due to improper plan for or defects in original construction of street or highway," 90 A. L. R. 1502.

▮ The courts have enunciated the general rule that a municipal corporation is not liable for injuries resulting from its adoption of a defective plan for a street or highway when the defects in such plan are due to mere error of judgment, but give that rule no application to the defective or negligent construction of its streets under an adopted plan or to their negligent maintenance. *Blackwelder* v. *City of Concord, supra;* 90 A. L. R. Annotation, *supra,* 1511 *et seq.*

"As we have seen, the municipality in devising plans and systems for supplying the public with water, sewerage and the like, exercises legislative duties involving the use of judgment and discretion, and it ought not to be held liable to civil actions for defects or want of efficiency of plans, at least during the formative or experimental stage of the enterprise; yet, after the work has been completed, and experience has demonstrated that the system is inadequate and insufficient to meet requirements or to effect the objects for which it was intended, there can be no reason to exempt the municipality from damage suffered by an individual from its continued use." *Stansbury* v. *City of Richmond,* 116 Va. 205, 81 S. E. 26, 51 L. R. A. (N. S.) 984.

The distinction between the negligent exercise of governmental and discretionary functions, for which a city is not liable, and the negligent performance of ministerial duties, for which it is liable, has been clearly pointed out by Judge Riely in *Jones* v. *City of Williamsburg,* 97 Va. 722, 34 S. E. 883, 47 L. R. A. 294, and by Justice Hudgins in *Hoggard* v. *City of Richmond,* 172 Va. 145, 200 S. E. 610, 120 A. L. R. 1368.

▮ A municipailty in selecting and adopting a plan for the construction of its public streets and drains acts in a governmental capacity; but in caring for and maintaining

such public works after their completion it acts merely in a ministerial capacity.

It has long been well settled in this state that it is the duty of a city to keep and maintain its streets in repair and in a safe condition for travel, free from defects and obstructions.

Although it is not an insurer against accidents on its streets, a city is liable for injuries sustained by reason of its failure to keep them in a reasonably safe condition for persons who exercise ordinary care and prudence for their own safety. *Noble* v. *City of Richmond*, 31 Gratt. (72 Va.) 271, 31 Am. Rep. 726; *Clarke* v. *City of Richmond*, 83 Va. 355, 5 S. E. 369, 5 Am. St. Rep. 281; *Gordon* v. *City of Richmond*, 83 Va. 436, 2 S. E. 727; *Moore* v. *City of Richmond*, 85 Va. 538, 8 S. E. 387; *City of Portsmouth* v. *Lee*, 112 Va. 419, 71 S. E. 630; *City of Radford* v. *Calhoun*, 165 Va. 24, 181 S. E. 345, 100 A. L. R. 1378; 9 Michie's Digest of Virginia and West Virginia Reports, page 250, and many cases cited; 7 McQuillan, Municipal Corporations (2d Ed.) pages 32-35.

The rule relied upon by the city and the cases cited in support of that rule are not controlling here, since the negligence upon which the plaintiff bases her right of recovery is not negligence in the adoption of the underlying plan of construction, but rather negligence in the actual construction and in the faulty maintenance of the construction after its dangerous condition had been made known to the city.

The evidence shows no negligence in the adoption of the plan of construction or in the actual construction. The plaintiff's case rests upon proof of the negligent failure of the city to maintain its street in a reasonably safe condition for travel in the usual modes.

The jury might have decided this case either way,—for the plaintiff, if they believed her evidence, or for the defendant if they believed its evidence.

The jury evidently believed that the car in which the plaintiff was riding was being driven at a lawful speed and

with reasonable care; that the gutters had become so shaped or worn that they were in a dangerous condition and in need of repair; that the city had notice of this dangerous condition before the accident and failed to make necessary repairs; and that the sole cause of her injuries was the negligent failure of the city to keep its street in a reasonably safe condition.

The jury saw and heard the witnesses and viewed the scene of the accident, and their verdict has been approved by the trial judge. There was evidence to support the verdict, and nothing to justify a conclusion that it was unworthy of belief, or that the jury acted as prejudiced, unfair or unreasonable men in accepting it.

Whether a city has notice of a defective condition in a street, whether due and proper care was exercised by it in keeping that street in a reasonably safe condition and whether the failure to exercise such care was the proximate cause of the injury inflicted upon persons traveling thereover are, ordinarily, questions for the jury, depending upon th circumstances of the particular case. *City of Radford* v. *Calhoun, supra.*

The assignment of error with reference to two instructions fails to comply with Rule of Court XXII as to the necessity of stating grounds of objection. The ground of exception to the refusal to give the instructions simply states that they should have been granted because they were supported by the law and the facts of the case. *Norfolk Southern Railroad Co.* v. *Lewis,* 149 Va. 318, 323, 141 S. E. 228.

Suffice it to say, the jury was instructed on all phases of the issue, and the instructions, as a whole, were not unfavorable to the city. The jury was told that there was no liability on the city for the exercise of its governmental discretion in adopting plans for the grading and paving of its street, and that if they believed the gutters in question were considered by the engineering department of the city as adequate and reasonably safe for proper travel thereover, and the street was smoothly paved in accordance

with the adopted plans, and properly maintained in that condition, the city was not liable.

We find no reversible error in the proceedings nor in the final judgment complained of. The judgment of the trial court is affirmed.

*Affirmed.*

BROWNING, J., dissenting.