## CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Paul Boyd, Jr.

v.

Cleveland Brown et al.

August 15, 1986

Case No. (Law) 9287-WS

By JUDGE J. WARREN STEPHENS

This matter came on to be heard on August 8, 1986, on the demurrer of defendants City of Newport News, Charles W. Alexander, Clarence B. Diersing, Jr., Neal B. Thompson, Randy Hildebrand, Thurman Walls and Robert Williams (defendants City and its employees). Paul Boyd, Jr. (the plaintiff), defendants City and its employees and defendant Cleveland Brown (defendant Brown) were present by counsel.

Upon consideration of the pleadings, the memoranda of counsel and argument of counsel for the plaintiff, defendants City and its employees and defendant Brown, the court renders this opinion in letter form.

For purposes of hearing on the demurrer, the facts are taken as alleged by the plaintiff in the motion for judgment, and, they being specifically set forth therein, there is no utility in further summarizing them. Nevertheless, the court must review and assess the legal substance of the plaintiff's claim against defendants City and its employees as framed in the motion for judgment and two bills of particular (motion for judgment).

The charge against defendants City and its employees is one of simple negligence. While it is true that the motion for judgment does not specifically allege that

defendants Alexander, Diersing, Jr., Thompson, Hildebrand, Walls and Williams were acting within the scope of their employment with defendant City, paragraph 1. thereof alleges, *inter alia*, that at all times material in the motion for judgment, "the defendant, City of Newport News, was a municipal corporation acting by and through its officers, agents, servants and employees, including, but not limited to, Charles W. Alexander, Clarence B. Diersing, Jr., Neal B. Thompson, Robert Williams, Randy Hildebrand and Thurman Walls . . . ." The plaintiff's claim against those defendants is succinctly summarized in the last sentence of paragraph 6. of the motion for judgment which alleges as follows:

> The City of Newport News, through its agents, servants and/or employees, had the power to abate this dangerous condition and had the authority and duty to place barrels and/or barricades around the building to protect would-be pedestrians from injuries which may have resulted from the ultra-hazardous condition of the building located thereon.

The plaintiff is charging liability against defendant City predicated on alleged negligence of its named agents, servants and/or employees, and others, and, no *ultra vires* act is charged in the motion for judgment against any of the defendant City's named employees. That pleading taken as a whole compels the conclusion that the charges made by the plaintiff against defendants Alexander, Diersing, Jr., Thompson, Hildebrand, Walls and Williams are for acts taken or failed to have been taken by them while they were acting within the scope of their employment with defendant City.

The thrust of the plaintiff's motion for judgment against defendants City and its employees is negligent failure (1) to abate or cause abatement of the alleged dangerous condition of the structure located at 2002 Jefferson Avenue, and (2) to place barrels and/or barricades around said structure to protect would-be pedestrians, and, particularly, the plaintiff, who on September 26, 1982, while allegedly walking north in the 2000 block of Jefferson Avenue beside said building was severely

injured when a wall of the same suddenly and without warning collapsed on him.

The motion for judgment does not specifically allege that the plaintiff was then and there using the defendant City's public street or sidewalk at the time of the collapse of the wall, but his allegation that he was walking north in the 2000 block of Jefferson Avenue is construed by the court to allege that he was then using the public street or sidewalk.

The caption of the motion for judgment delineates defendants Alexander, Diersing, Jr., Thompson, Hildebrand, Walls and Williams as having therein named relationships with defendant City. It does not, however, in its body specifically allege the existence of positions of any of them with defendant City involving judgment and discretion. The caption describes relationships with defendant City of defendants Hildebrand, Walls and Williams as Assistant City Manager, as Fire Chief, and, as City Manager, respectively. By the very nature of those stated positions, defendants Hildebrand, Walls and Williams occupied positions with defendant City involving exercise of judgment and discretion.

In summary, the plaintiff charges that as a direct and proximate result of the joint and several negligence of all the defendants, and, in particular, that of defendants City and its employees (1) in failing to abate or cause the abatement of the therein alleged dangerous condition, and (2) in failing to place barrels and/or barricades around the building to protect would-be pedestrians, and, in particular, the plaintiff for injuries which may result from the alleged ultra-hazardous condition of the building located thereon. It follows, then, and, is susceptible of the single interpretation, *i.e.*, those acts of which the plaintiff complains and charges against defendant City's said named employees were by their very nature, acts involving the exercise or use of judgment and discretion.

The court concludes that the motion for judgment as a matter of law charges that defendants Alexander, Diersing, Jr., Thompson, Hildebrand, Walls and Williams are employees of defendant City exercising judgment and discretion in discharge of governmental duties and functions.

The "doctrine of sovereign immunity is 'alive and well' in Virginia . . . ." *Messina v. Burden*, 228 Va. 301, 307 (1984), "The dominant purpose of the Building Code, therefore, is to provide comprehensive protection of the public health and safety . . . ." *VEPCO v. Savoy Construction Company, Inc.*, 224 Va. 36, 44 (1982).

The threshold issue raised by said demurrer is whether enforcement of the City's building code is (1) governmental, or (2) private or proprietary, and, what, if any, effect a ruling of governmental would have on the non-delegable duty of the City to perform proprietary function in maintenance of its public streets and sidewalks.

No Virginia decisions have been cited concerning the status (governmental/proprietary) of administration and enforcement of the City's building code, but authorities from other jurisdictions are persuasive.

*Weston, et ux. v. New Bethel Missionary Baptist Church et al., etc.*, 23 Wash. App. 747, 590 P.2d 411 (decided by Court of Appeals of Washington, Division 1, October 23, 1978, reconsideration denied February 28, 1979, review denied by Supreme Court June 1, 1979, as changed September 7, 1979) was action by adjoining property owners against defendants (including City of Seattle) for damages caused by collapse of a rockery. Seattle issued the building permits for the construction of a parking lot, a concrete retaining wall, and a sixteen foot high rockery. It was alleged that the church failed to properly compact the soil under the rockery and that the same was built to a height of twenty-two feet, some six feet over approved height, and, for those reasons, the same collapsed.

The plaintiffs obtained partial summary judgment establishing liability against the church and voluntarily dismissed as to the other defendants. The church had cross-claimed against the co-defendants for indemnity but the trial court dismissed the church's claims against them.

On appeal, the court held that Seattle owed no duty *to the plaintiffs* (emphasis supplied) and the trial court correctly held that the church's action against the city be dismissed saying (at page 414):

As stated in *Halvorson v. Dahl*, 89 Wash. 2d 673, 676, 574 P.2d 1190 (1978):

"The traditional rule is that municipal ordinances impose a duty upon municipal officials which is owed to the *public* as a *whole* so that a duty enforceable in tort is not owed to any particular *individual* . . . ."

*Hoffert et al. v. Owatonna Inn, etc., et al.*, 293 Minn. 220, 199 N.W.2d 158 (1972), were actions for personal injuries to and death of occupants of a motel resulting from a fire occurring in December 1969. All actions named the motel as a defendant and plaintiffs Hoffert also sued the city. Third party and indemnity actions were filed.

The claims against the city were dismissed by the trial court on the grounds that the issuance of a building permit for construction which violated the city's building code did not create a cause of action against the city.

In affirming, Supreme Court of Minnesota at page 160 concluded that the purpose of the building code is to protect the public and an individual who is injured by the alleged negligent performance of the building inspector in issuing the building permit does not have a cause of action.

*Worth Distributors, Inc. v. Gertrude G. Lathan et al.*, 59 N.Y.2d 231, 451 N.E. 193, decided by the Court of Appeals of New York on June 14, 1983, was an appeal from actions taken by Supreme Court, New York County (trial court) and its Appellate Division.

A portion of a hotel collapsed in lower Manhattan in August of 1973 killing four persons and injuring many others and causing extensive property damage. Actions were brought against the defendants allegedly responsible therefor, and, in a non-jury trial, the court apportioned liability among the defendants and found the city liable (page 194) "because of its department of buildings' failure to ensure that the building's dangerous condition was remedied before it collapsed . . . ." In reversing, the Court of Appeals (at page 194) said:

The city should not have been held liable. As this court recently reaffirmed, "it has long

been the rule in this State that, in the absence of some special relationship creating a duty to exercise care for the benefit of particular individuals, liability may not be imposed on a municipality for failure to enforce a statute or regulation" (*O'Connor v. City of New York*, 58 N.Y.2d 184, 192, 460 N.Y.S.2d 485, 447 N.E.2d 33). Here the city building department failed to enforce provisions of the city's Administrative Code relating to building safety, even though its employees knew of the dangerous structural conditions in the building. These regulations were designed to protect the general public, however, and no special relationship has been shown that would establish a municipal duty to the instant plaintiffs in particular. Thus, the complaints should be dismissed as against the City of New York, and appointment of liability among the remaining defendants redetermined accordingly.

See also *Devonshire, etc., et al. v. Harper, Jr., et al.*, 92 Ill. App. 3d 595, 416 N.E.2d 59, decided by Appellate Court of Illinois, Fifth District, January 9, 1981.

The court is of the opinion and finds that the defendants City and its employees in the administration and enforcement of the building codes of which complaint is made by the plaintiff were performing or failing to perform governmental functions.

The gravaman of the plaintiff's claim against defendants City and its employees is the collapse of the building caused by their alleged negligence. The alleged defect in, to or above the public sidewalk being used by the plaintiff is predicated on the alleged negligence of defendants City and its employees while engaged in performance or non-performance of governmental functions respecting the adjacent building.

The case of *Taylor v. City of Newport News et al.*, 214 Va. 9 (1973), controls the plaintiff's claim against defendant City. In affirming judgment of the trial court striking evidence of plaintiff Taylor caused to fall on slippery substance negligently spilled on public sidewalk

by city employee while collecting garbage, the Supreme Court of Virginia at page 10 said:

> We are of opinion that the trial court properly ruled that the city was immune from liability for Mrs. Taylor's injury. In Virginia, a municipality acts in a dual capacity, the one governmental and the other proprietary. It is immune from liability for negligence in performing or in failing to perform governmental functions. It is not so immune with respect to proprietary functions. *Fenon v. City of Norfolk,* 203 Va. 551, 555, 125 S.E.2d 808, 811 (1962).
>
> The municipal collection of garbage is a governmental function. *Ashbury v. Norfolk,* 152 Va. 278, 283, 147 S.E. 223, 224-25 (1929). On the other hand, municipal maintenance of public streets and sidewalks is a proprietary function. *City of Norfolk v. Hall,* 175 Va. 545, 551-52, 9 S.E.2d 356, 359 (1940). But when injury occurs in a street or on a sidewalk not from some defect therein but from the alleged negligence of a municipal employee engaged in a governmental function such as the collection of garbage, the municipality is immune from liability. *Ashbury v. Norfolk, supra. In other words, where governmental and proprietary functions coincide, the governmental function is the overriding factor.* (emphasis supplied)

Applying the analysis and test delineated in the majority opinion of the Supreme Court of Virginia in *Messina v. Burden* (consolidated on appeal with *Armstrong v. Johnson*), 228 Va. 301 (1984), and having construed that the motion for judgment alleges (1) that defendants Alexander, Diersing, Jr., Thompson, Hildebrand, Walls and Williams were acting within the scope of their employment with defendant City, and (2) that their activities as employees of defendant City necessarily involved exercise of judgment and discretion, the court concludes that said defendants are entitled to immunity from the tort

action of the plaintiff. *See also Hinchey v. Ogden*, 226 Va. 234 (1983).

Accordingly, the court concludes that governmental immunity protects defendants City and its employees from liability to the plaintiff in this action.

The demurrer of defendants City and its employees is sustained on the ground set forth in paragraph 1. thereof and the motion for judgment is dismissed as to them. However, leave is granted the plaintiff to file an amended motion for judgment against said defendants within twenty-one days after entry of order sustaining said demurrer, if he be so advised, and failing so to do, the action of the court so sustaining shall be final.