**Maxine CARTER, Plaintiff,**

v.

**CITY OF BRISTOL, VIRGINIA, Defendant.**

**Civ. A. No. 84–0413–A.**

United States District Court, W.D. Virginia, Abingdon Division.

June 3, 1987.

George M. Warren, Jr., Bristol, Va., for plaintiff.

Edward G. Stout, Bristol, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is presently before the court on defendant's motion for summary judgment.

The underlying facts are as follows. In the late 1960's the State of Virginia ("Virginia") redesigned a thoroughfare in Bristol. Virginia widened this street, built new sidewalks, and constructed driveways on some of the commercial lots. The City of Bristol ("Bristol") assumed responsibility for maintenance after Virginia had completed the project.

Cecil's Market, a produce stand, subsequently moved onto one such lot. In 1982 the plaintiff, Maxine Carter ("Carter"), was purchasing fruit from Cecil's Market. Even though Carter frequently traded at Cecil's Market and had walked back and forth between her car and the market several times that day, she tripped where the sidewalk curved downward to from the sides of the driveway. She has sued Bristol for failing to maintain or repair the curb and sidewalk, causing or accepting a defective design, and failing to abate a nuisance.

Bristol has moved for summary judgment contending that Carter's contributory negligence provides a complete defense to negligence and nuisance, that under Virginia law no act that the state legislature has authorized can constitute a nuisance, and that Bristol enjoys sovereign immunity from suit.

The threshold question before the court is whether sovereign immunity protects Bristol from suit.

■ The overwhelming majority of states including Virginia immunize municipalities from suit for governmental acts but not for proprietary acts. 57 Am.Jur.2d *Municipal Liability* § 27 (1971). *See also Hoggard v. Richmond,* 172 Va. 145, 147, 200 S.E. 610, 611 (1939) and *Jones v. Williamsburg,* 97 Va. 722, 723, 34 S.E. 883, 883 (1900). Governmental acts are "[t]hose duties of a municipality that have reference to some part or element of the state's sovereignty granted it to be exercised for the benefit of the public" such as "[a]ctivities which are carried on by [a] city, pursuant to state requirement, in discharge of state's obligation for health, safety or general welfare of public generally, or which are voluntarily assumed by city for benefit

of public generally rather than for its own citizens." Black's Law Dictionary 626 (5th ed. 1979). In contrast, proprietary acts are functions that a city exercises "for [the] peculiar benefit and advantage" of its citizens. Black's Law Dictionary 1098 (5th ed. 1979). Because the state cannot be sued without its consent, when a city substitutes for the state, it enjoys that immunity. However, no such immunity attaches when a city is not performing a state function. *Hoggard v. Richmond*, 172 Va. at 147–48, 200 S.E. at 611.

Distinguishing between governmental and proprietary acts is significantly more difficult than acknowledging the distinction. 57 Am.Jur.2d *Municipal Liability* § 31 (1971). *See also Hoggard v. Richmond*, 172 Va. 145, 150, 200 S.E. 610, 612 (1939). For instance, the operation of a park and playground is governmental whereas the operation of a swimming pool is proprietary. *Hoggard v. Richmond*, 172 Va. 145, 200 S.E. 610 (1939).

Even Virginia case law concerning municipal functions affecting streets and sidewalks does not clearly distinguish governmental acts from proprietary acts. In *Jones v. Williamsburg*, 97 Va. 722, 34 S.E. 883 (1900), the court held that a city could not be sued for its failure to pass an ordinance prohibiting bicycling on its sidewalks because regulating the use of sidewalks and streets is governmental. In *Freeman v. Norfolk*, 221 Va. 57, 266 S.E.2d 885 (1980), the court held that regulating and controlling traffic—including determining whether to install such safety devices as traffic lights, blinkers, warning signals, roadway markings, railings, barriers, guardrails, and curbings—are governmental functions. And the court in *Transp., Inc. v. Falls Church*, 219 Va. 1004, 254 S.E.2d 62 (1979), held that even a failure to repair a malfunctioning traffic light constitutes regulating and controlling traffic. Significantly the Virginia Supreme Court has also indicated that "to lay off streets and walks, and improve the same" is governmental. *Jones v. Williamsburg*, 97 Va. at 725, 34 S.E. at 883. On the other hand, maintaining streets and sidewalks is a proprietary function. *Freeman v. Norfolk*,

221 Va. at 59, 266 S.E.2d at 886. *See also Norfolk v. Hall*, 175 Va. 545, 552, 9 S.E.2d 356, 359 (1940) and *Jones v. Richmond*, 118 Va. 612, 618, 88 S.E. 82, 83 (1916) (grading and improving streets and removing surplus earth constitute proprietary functions).

Due to the unclear nature of municipal acts, courts evaluate different factors to distinguish governmental functions from proprietary functions. Some courts consider whether the act in question benefits the general public as opposed to community residents. 57 Am.Jur.2d *Municipal Liability* § 31 (1971). Other courts "emphasize the element of pecuniary consideration, profit, or gain as a factor in determining municipal liability." 57 Am.Jur.2d *Municipal Liability* § 33 (1971). *See also Hoggard v. Richmond*, 172 Va. 145, 150, 200 S.E. 610, 612 (1939). This pecuniary gain test often results in municipal liability for providing such goods and services as water and sewerage.

Carter's complaint attempts to hold Bristol liable for its failure to fill in the driveway attached to Cecil's Market to form a level walking surface with the sidewalks, an act this court views as a failure to redesign rather than a failure to maintain and repair. This failure to redesign aligns closely with the principle enunciated in *Jones v. Williamsburg* that "to lay off streets and walks, and improve the same" is governmental. Furthermore, application of the two tests for distinguishing governmental acts from proprietary acts indicates that Bristol was acting in a governmental capacity when it did not redesign the sidewalks and driveway adjacent to Cecil's Market. After all, Virginia had originally designed and built this area; Bristol simply assumed maintenance responsibility. And the street and sidewalk system affects the transportation and commerce of residents throughout the state. Finally, Bristol realized no pecuniary gain from its responsibility for this system.

Two additional maxims reinforce a decision to immunize Bristol. 57 Am.Jur.2d *Municipal Liability* § 30 (1971) indicates

that "[t]he analytical approach ought not to be one of asking why immunity should not apply in a given situation but rather one of asking whether there is any reason why it should apply." And in *Transp., Inc. v. Falls Church*, 219 Va. 1004, 1006, 254 S.E.2d 62, 64 (1979), the court, in explaining its decision to immunize a city for its failure to repair a malfunctioning traffic signal said:

Admittedly, the repair of a malfunctioning traffic signal bears some relationship to street maintenance and displays, therefore, a characteristic of a proprietary function. But a system of signals is designed to regulate traffic, and its dominant purpose is to reduce loss of life, limb, and property by preventing vehicular and pedestrian accidents at intersections. Thus, in the activity of maintaining traffic signals ... there is involved "the purpose of protecting the general public health and safety," a distinguishing feature of a governmental function. And, "where governmental and proprietary functions coincide, the governmental function is the overriding factor" (quoting *Taylor v. Newport News*, 214 Va. 9, 10, 197 S.E.2d 209, 210 (1973)).

Carter relies heavily on *Stansbury v. Richmond*, 116 Va. 205, 81 S.E. 26 (1914) for the proposition that eventually any failure to modify an inadequate system is proprietary. This argument does not persuade the court. In *Stansbury* the court held Richmond could be sued for its failure to correct a water system that had proved unsatisfactory. This court interprets *Stansbury* as providing an exception to the rule that a municipality acts proprietarily in providing water to its residents for the experimental or formative stages.

Consequently, in light of general authority and Virginia case law, this court is of the opinion that Bristol's failure to redesign the sidewalk area adjacent to Cecil's Market constitutes a governmental act that is immune from suit; and this court must grant Bristol's motion for summary judgment.

The Court is also of the opinion that summary judgment should be granted because Carter was contributorily negligent as a matter of law.

■ Normally negligence and contributory negligence present factual issues inappropriate for summary judgment. 6 J. Moore and J. Wicker, *Moore's Federal Practice* ¶ 56.17(42) (2d ed. 1985). *See also* 57 Am.Jur.2d *Negligence* § 295 (1971). Virginia authority is in accord. *See Crocker v. WTAR Radio Corp.*, 194 Va. 572, 574, 74 S.E.2d 51, 53 (1953).

Two elements compose negligence and contributory negligence—duty and breach of duty. Virginia law indicates that only the issue of whether a duty has been breached is inappropriate for summary judgment. *Acme Mkts., Inc. v. Remschel*, 181 Va. 171, 178, 24 S.E.2d 430, 434 (1943). However, even this second element is suitable for summary judgment if "fairminded men could [not] draw different inferences from uncontradicted circumstances." *Bassett Furniture Indus., Inc. v. McReynolds*, 216 Va. 897, 907, 224 S.E.2d 323, 329 (1976). *See also Crocker v. WTAR Radio Corp.*, 194 Va. 572, 574, 74 S.E.2d 51, 53 (1953) and *Acme Mkts., Inc. v. Remschel*, 181 Va. 171, 177, 24 S.E.2d 430, 433 (1943).

*Hillsville v. Nester*, 215 Va. 4, 5, 205 S.E.2d 398, 399 (1974) sets forth the appropriate legal standard for determining contributory negligence in the instant case:

A pedestrian injured on account of a sidewalk defect is guilty of contributory negligence as a matter of law when he had actual knowledge of the defect and no reasonable excuse for inattention ... [or when] although the pedestrian had no actual knowledge, the defect was open and obvious and, by the exercise of ordinary care, could have and should have been seen.

■ In this case the driveway was open and obvious, and Carter had traversed the area moments prior to the accident and on numerous other occasions. She claims she did not notice the downward curve of the sidewalk that formed the driveway. However, the driveway was open and obvious; and Carter's failure to look where she was walking constitutes contributory negligence.

The Virginia cases that have held a plaintiff contributorily negligent as a matter of law support this court's analysis. In *West*

*v. Portsmouth,* 217 Va. 734, 232 S.E.2d 763 (1977), the court affirmed the trial court's grant of summary judgment when plaintiff had tripped on a water meter box on a sidewalk in an area that he had traversed four or five times weekly for many years. And in *Hillsville v. Nester,* 215 Va. 4, 5, 205 S.E.2d 398, 399 (1974), the court held plaintiff was contributorily negligent as a matter of law when she had tripped and fallen on a "substantial and readily discernible" crack in a sidewalk on which she had walked numerous times during the previous eight months. Certainly Carter's familiarity with Cecil's Market is comparable to the plaintiffs' in *West* and *Hillsville.* Consequently, this court is of the opinion that Carter's contributory negligence is appropriate for summary judgment.

Although the nuisance issues remain, this court need not discuss them due to its grant of summary judgment on the issue of sovereign immunity.

In accordance with this Memorandum Opinion, an order will be entered granting summary judgment to Bristol and striking this cause from the docket.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.