COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Friedman and Senior Judge Petty
Argued at Williamsburg, Virginia

PUBLISHED

CURTIS DAVID LYTLE

v.        Record No. 1655-24-1

CITY OF SUFFOLK

OPINION BY
JUDGE FRANK K. FRIEDMAN
SEPTEMBER 16, 2025

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Alfred W. Bates, III, Judge

Timothy Anderson (Anderson & Associates, PC, on brief), for
appellant.

Rebecca J. Powers, Assistant City Attorney, for appellee.


This case addresses whether a city's use of a speed monitoring camera to issue tickets to

drivers is a governmental function sufficient to confer the protections of sovereign immunity on

the municipality.  After receiving a speeding ticket in the mail for a fine detected by a photo

speed camera, Curtis Lytle sought a declaratory judgment against the City of Suffolk.  He

alleged the speeding ticket was unlawful and that the City was not operating the photo speed

camera system in compliance with Virginia's statutory scheme.  The Circuit Court for the City of

Suffolk granted the City's plea in bar and dismissed the case, finding the City was engaged in a

governmental function and was thus protected by sovereign immunity.  Lytle appeals that ruling.

BACKGROUND[1]

Pursuant to Code § 46.2-882.1,[2] the City adopted Ordinance 23-O-029 which allows the City to maintain a camera system to monitor driver speed and enforce the speed limit. On June 23, 2023, a vehicle registered to Lytle was photographed traveling at 51 miles per hour in a work zone. The posted speed limit was 35 miles per hour. On July 17, 2023, the City issued Lytle a "Notice of Violation/Summons" for speeding, certified by a City law-enforcement officer, with a demand to pay $100. The Notice included instructions for paying the civil penalty, and instructions for contesting the Notice, including procedures for requesting a trial date in the General District Court for the City of Suffolk.

Lytle received the Notice on July 22, 2023. Following receipt of the violation, Lytle failed to pay the penalty and failed to request a trial date to contest the merits of the Notice. Instead, many months later, on April 5, 2024, Lytle filed a complaint for a declaratory judgment and injunctive relief in the Circuit Court for the City of Suffolk. Specifically, Lytle alleged the City: (1) failed to issue a proper summons, (2) failed to follow the appropriate procedures for initiating a traffic case, (3) failed to follow procedures for filing an affidavit for non-liability, (4) committed fraud, and (5) was guilty of maladministration of government. The City responded by filing a plea in bar, asserting sovereign immunity, and a demurrer. Lytle filed a reply, and the circuit court heard oral argument on the plea in bar and demurrer.

The circuit court ultimately sustained the City's plea in bar and dismissed the complaint with prejudice. Reasoning that maintenance of a photo speed monitoring system fell under the

---

[1] "When the circuit court takes no evidence on the plea in bar, we accept plaintiff's allegations in the complaint as true." *Plofchan v. Plofchan*, 299 Va. 534, 547-48 (2021) (citing *Station #2, LLC v. Lynch*, 280 Va. 166, 169 (2010)).

[2] Code § 46.2-882.1 allows local law-enforcement agencies to place photo speed monitoring systems in school crossing zones, highway work zones, or high-risk intersections.

governmental function of regulating traffic, the court held: (1) the City was protected by sovereign immunity, and (2) Code § 8.01-184, the statute on which Lytle relied, did not waive that immunity. The court did not consider the merits of the City's demurrer. Lytle now appeals.

ANALYSIS

"We apply a de novo standard of review when '[t]here are no disputed facts relevant to the plea in bar and it presents a pure question of law.'" *Smith v. McLaughlin*, 289 Va. 241, 251 (2015) (quoting *David White Crane Serv. v. Howell*, 282 Va. 323, 327 (2011)). Additionally, the "existence of sovereign immunity is a question of law that is reviewed de novo." *Gray v. Va. Sec'y of Transp.*, 276 Va. 93, 97 (2008) (citing *City of Chesapeake v. Cunningham*, 268 Va. 624, 633 (2004)).

Lytle argues that the circuit court erred in granting the City's plea in bar. First, Lytle contends the circuit court erred in ruling the City's use of the speed monitoring system qualifies as a governmental function because, he reasons, the City's use of a third-party private vendor and its collection of civil fines both indicate the implementation of the photo speed monitoring system is a proprietary function solely for the City's benefit. Second, Lytle argues that, even if the City is engaging in a governmental function, Dillon's Rule provides an exception to sovereign immunity by which a plaintiff may challenge a municipal policy.

The City contends that use of the speed monitoring system constitutes a governmental function, and further argues Lytle's reliance on Dillon's Rule was not properly preserved below. We agree with the City.

I. The Circuit Court Correctly Found that the City was Entitled to Sovereign Immunity

Sovereign immunity protects the state from "burdensome interference" with the performance of government functions. *Cunningham*, 268 Va. at 633. Further, "[s]overeign immunity provides for 'smooth operation of government' and prevents citizens from 'improperly

- 3 -

influencing the conduct of governmental affairs through the threat or use of vexatious litigation.'" *Newport News Sch. Board v. Z.M.*, ___ Va. ___, ___ (May 8, 2025) (quoting *City of Virginia Beach v. Carmichael Dev. Co.*, 259 Va. 493, 499 (2000)). Generally, sovereign immunity renders the Commonwealth immune from liability for tortious acts, unless an express statutory or constitutional provision waives immunity. *Melanson v. Commonwealth*, 261 Va. 178, 181 (2001). Sovereign immunity is implemented to protect "the public purse, [provide] for smooth operation of government, [eliminate] public inconvenience and danger that might spring from officials being fearful to act . . . ." *Messina v. Burden*, 228 Va. 301, 308 (1984). "[I]f sovereign immunity applies, the court is without subject matter jurisdiction to adjudicate the claim." *Afzall v. Commonwealth*, 273 Va. 226, 230 (2007).

"As a general rule, the sovereign is immune not only from actions at law for damages but also from suits in equity to restrain the government from acting or to compel it to act." *Gray*, 276 Va. at 102 (citation omitted). "Absent an express statutory or constitutional provision waiving sovereign immunity, the Commonwealth and its agencies are immune from liability for the tortious acts or omissions of their agents and employees." *Rector & Visitors of the Univ. of Va. v. Carter*, 267 Va. 242, 244 (2004).

### A. Municipalities are only Entitled to Sovereign Immunity when they are Engaging in Governmental Functions

"Virginia has long recognized that local governments share in the Commonwealth's sovereign immunity." *Massenburg v. City of Petersburg*, 298 Va. 212, 217 (2019) (citing *City of Richmond v. Long*, 58 Va. (17 Gratt.) 375, 379 (1867)). However, unlike counties, which enjoy the full protection of sovereign immunity, municipalities are only entitled to immunity in instances of "liability arising from governmental functions, but not proprietary functions." *Id.* at 217-18. Thus, whether a municipality is entitled to sovereign immunity depends on the type of function it was exercising when liability arose. *Id.*; *see also Jean Moreau & Assocs. v. Health*

*Center Comm'n*, 283 Va. 128, 137 (2012) ("The shield of sovereign immunity does not just apply to the State; it also applies to municipal corporations under certain circumstances . . . . Municipal corporations are immune from liability when performing governmental functions, but are not when exercising proprietary functions.").

"A municipality engages in a governmental function when it exercises powers and duties exclusively for the public welfare, effectively acting 'as an agency of the state to enable it to better govern that portion of its people residing within its corporate limits.'" *Patterson v. City of Danville*, 301 Va. 181, 189 (2022) (quoting *Hoggard v. City of Richmond*, 172 Va. 145, 147 (1939)). "A function is governmental if it is 'directly tied to the health, safety, and welfare of the citizens.'" *Niese v. City of Alexandria*, 264 Va. 230, 239 (2002). The Supreme Court has also observed that "a governmental function involves 'the exercise of an entity's political, discretionary, or legislative authority.'" *Id.* (quoting *Carter v. Chesterfield Cnty. Health Comm'n*, 259 Va. 588, 591 (2000)); *see also Page v. Portsmouth Redevelopment & Hous. Auth.*, ___ Va. ___, ___ (July 3, 2024) (noting that "[g]overnmental functions have a 'political, discretionary and legislative' character, and typically involve exercises of 'discretion' while performing 'delegated or imposed' duties" (citation omitted)). Proprietary functions, conversely, involve a municipality's exercise of power primarily for its own benefit. *Massenburg*, 298 Va. at 218. Furthermore, if a function is solely a ministerial act and involves no discretion, it is proprietary. *Carmichael*, 259 Va. at 499. "[P]roprietary functions generally involve nondiscretionary duties such as those imposed by the common law on private parties." *Page*, ___ Va. at ___. Notably, in situations "where governmental and proprietary functions coincide, the governmental function is the overriding factor." *Taylor v. Newport News*, 214 Va. 9, 10 (1973).

B.  Operating a Photo Speed Monitoring System is a Governmental Function

Under Code § 46.2-882.1, the General Assembly confers to state and local law-enforcement agencies the ability to operate photo speed monitoring systems.  The City is only authorized to install the speed monitoring devices in areas where there are significant concerns related to traffic accidents.  The authority to operate the speed monitoring systems is limited to school crossing zones, highway work zones, or high-risk intersections.  Code § 46.2-882.1(B).  The City, itself, must determine which areas qualify for—and require—camera coverage.  Additionally, while municipalities may delegate maintenance of the systems to third-party private vendors, they must, according to the statute, maintain discretionary authority over ticketing.  *See* Code § 46.2-882.1(H).  Every violation pursued under the authority conferred by Code § 46.2-882.1 must be certified by a law-enforcement officer who has inspected the images recorded by the speed monitoring system.  *Id.*

Here, the City used its photo speed monitoring systems to regulate traffic, placing the systems in work zones as allowed under the statutory framework.  Lytle received his ticket for speeding in a work zone.  Lytle argues, however, that the City should not be entitled to the protections of sovereign immunity because the City was fundamentally engaged in a proprietary rather than governmental function in its operation of the speed monitoring system.

1.  The Fact that a Third-Party Entity Plays a Role in the Ticketing Process does not Deprive the City of the Sovereign Immunity Defense

Lytle first contends that the City's reliance on a third-party vendor implies that the use of the system is for the City's benefit and thus proprietary.  Yet as noted above, under Code § 46.2-882.1(H), municipalities may contract with private vendors to provide speed monitoring devices and other related support services, including administration.  While the City contracted with a third-party private vendor to mail a "Notice of Violation/Summons" following alleged

violations, each Notice is certified by a City law-enforcement officer who reviews the images recorded by the cameras. Thus, the operation remains discretionary because a law-enforcement officer reviews the photos and determines whether to issue a summons based on the photo and information gathered by the camera. *See Carter*, 259 Va. at 591 ("A function is considered governmental if it is the exercise of an entity's political, discretionary, or legislative authority.").

Furthermore, the fact that a third-party entity plays a role in the process does not prohibit application of sovereign immunity—our courts have applied governmental immunity in matters involving contracts with third parties. *See Edwards v. City of Portsmouth*, 237 Va. 167, 172 (1989) (providing ambulance services through the use of a private company was a governmental function). We reject Lytle's suggestion that the City's use of a third-party private vendor automatically renders the operation of the system proprietary.

> 2. Virginia Case Law Demonstrates that Traffic Regulation Presents a Governmental Function

Lytle also argues that because the City collects civil fines resulting from violations captured via the photo speed monitoring devices, it necessarily means the program is a non-discretionary ministerial act performed for a pecuniary benefit, amounting to a proprietary function. Lytle likens the City's use of the speed monitoring system to sidewalk and road maintenance, which are proprietary functions, as opposed to cases involving police powers, a governmental function. *See, e.g.*, *City of Va. Beach v. Flippen*, 251 Va. 358, 362 (1996) ("The maintenance of sidewalks is a proprietary, not a governmental, function of a municipal corporation[.]"); *see also Norfolk v. Hall*, 175 Va. 545, 553-54 (1940) (holding that the repair of a road is a proprietary function).[3]

---

[3] Lytle also compares the operation of a speed monitoring system to the collection of tolls at tollbooths. To support his argument, Lytle cites *Hobbs v. Richmond Metropolitan Authority*, 36 Va. Cir. 488 (1995), a circuit court case finding the operation of a tollgate is a proprietary function and thus the municipality in that case was not entitled to sovereign immunity. *Id.* at

Our case law demonstrates that the distinction between whether a municipality's roadway-related actions fall under governmental or proprietary functions generally lies in whether the municipality is engaging in a judgmental or discretionary action for the public welfare (which is protected under sovereign immunity), or acting in a purely ministerial or maintenance-related capacity. *See Hall*, 175 Va. at 551-52 ("A municipality in selecting and adopting a plan for the construction of its public streets and drains acts in a governmental capacity; but in caring for and maintaining such public works after their completion it acts merely in a ministerial capacity.").[4]

Virginia case law confirms that a municipality engages in a governmental function when it exercises its police powers. *Lee v. City of Norfolk*, 281 Va. 423, 493 (2011) (citing *Cunningham*, 268 Va. at 633). Police powers include regulating traffic. *Freeman v. Norfolk*, 221 Va. 57, 59 (1980) ("The rule Virginia follows is that the regulation by municipalities of traffic on their streets constitutes the exercise of a governmental function."); *see also Transp., Inc. v. Falls Church*, 219 Va. 1004, 1006 (1979) (holding that in maintaining traffic signals, a municipality is engaged in a governmental function, making the City immune from liability). Thus, traffic regulation is a governmental function, and, similarly, configuration of traffic signals

---

489-90. We first note that circuit court opinions are not binding on this Court. *See McGinnis v. McGinnis*, 69 Va. App. 572, 580 (2018) (noting circuit court opinions not binding on the Court of Appeals of Virginia). Even so, Lytle's argument is unpersuasive. The collection of tolls at tollbooths is wholly distinct from the operation of speed monitoring systems here. The collection of tolls requires no discretion; the toll is set, and the collection of that toll is compulsory. If the toll is not paid, the gate does not raise. Some tolls are manned by individuals working for the state, others are automatic and run by machines; regardless, there is no discretion by the tollbooth worker or the machine whether to increase the toll, or whether to raise the gate if the toll is paid. Here, the law-enforcement officer possesses the ultimate discretion to issue a ticket or not based on information provided by the speed monitoring camera. By statute, no ticket can be issued without review by law enforcement. Code § 46.2-882.1(H).

[4] *See also Cunningham*, 268 Va. at 640 (holding "that the City's redesign and planning of the [water] Plant and its public information campaign regarding temporary risks associated with consuming City water were governmental functions" and thus sovereign immunity applied).

and planning traffic flow is a governmental function. *See Falls Church*, 219 Va. at 1006; *Hall*, 175 Va. at 551-52; *Freeman*, 221 Va. at 59-60. Even roadway maintenance decisions can be governmental functions where they involve judgment and discretion; for example, after a storm which has created hazardous road conditions such as felled trees or snowdrifts, deciding which roadways to clear first is a governmental function. *Bialk v. Hampton*, 242 Va. 56, 59 (1991) (holding that city's snow-removal, done for the common good, is a governmental function); *Fenon v. City of Norfolk*, 203 Va. 551, 556 (1962) (finding that the removal of downed trees after a hurricane is a governmental function).

By contrast, routine repair or maintenance of existing roadways is generally proprietary. *City of Richmond v. Branch*, 205 Va. 424, 428 (1964). The same is true of the ministerial role of routine maintenance of sidewalks. *Hall*, 175 Va. at 551-52; *Flippen*, 251 Va. at 362.

Thus, a review of Virginia precedent on roadway-related claims involving sovereign immunity leads to the inevitable conclusion that the City's use of speed monitoring cameras pursuant to Code § 46.2-882.1 involves a governmental function. Here, the intent of the photo speed monitoring program is to attempt to control the speed and flow of traffic and prevent traffic accidents in areas where pedestrians or road workers are particularly vulnerable; and the imposition of civil fines for violations captured via the photo speed monitoring devices acts as a deterrent for speeding motorists. The Code of Virginia contains numerous grants of authority to localities that enable them to collect civil fines to act as deterrence mechanisms for the protection of the public.[5] The City, while collecting fines, is doing so as an exercise of its power for the

---

[5] For example, Code § 15.2-1429 grants localities the general power to prescribe fines and other punishments for violations of ordinances, enforceable as if such violations were misdemeanors. Code § 15.2-2209 authorizes localities to adopt ordinances establishing a uniform schedule of civil penalties for specified zoning ordinance violations. Code § 15.2-980 permits localities to adopt a uniform schedule of civil penalties for violations of noise ordinances. Code § 15.2-907.1 allows localities with real estate tax abatement programs to adopt

general well-being and benefit of its citizens. *See Harrell*, 265 Va. at 504 (operating "a system of signals is designed to regulate traffic, and its dominant purpose is to reduce loss of life, limb, and property by preventing vehicular and pedestrian accidents at intersections"). By implementing the speed photo system, the City is protecting the general health and safety of pedestrians, workers, and other motorists in high-risk areas, a touchstone of a governmental function. In doing so, the City is also exercising judgment and discretion for the welfare of the public. Thus, we hold that the circuit court correctly determined that the City's implementation of a speed monitoring system designed for the purpose of preventing accidents in high-risk zones qualifies as a governmental function. Consequently, the circuit court properly granted the City's plea in bar of sovereign immunity. *Id.*

> II. Lytle Failed to Preserve his Argument that Dillon's Rule Provides a Waiver of Sovereign Immunity for the City

Sovereign immunity may bar a declaratory judgment proceeding against the Commonwealth. *Sch. Bd. of Stafford Cnty. v. Sumner Falls Run, LLC*, ___ Va. ___ (July 3, 2024). Lytle argues on appeal that there is an exception to sovereign immunity, under Dillon's Rule, by which a plaintiff may seek declaratory judgment against a municipality. Under Dillon's Rule, localities may exercise only those powers or adopt ordinances that the General Assembly expressly authorizes by statute or are conferred by necessary implication. *Amin v. Cnty. of Henrico*, 63 Va. App. 203, 208 (2014) (citing *Lawless v. Cnty. of Chesterfield*, 21 Va. App. 495, 499 (1995)).[6]

---

ordinances requiring the removal, repair, or rehabilitation of derelict buildings, with associated civil penalties for non-compliance.

[6] Virginia's Declaratory Judgment Act, Code § 8.01-184, allows a litigant to file a claim without the requirement of an actual injury, but it does "not create or change any substantive rights, or bring into being or modify any relationships, or alter the character of controversies, which are subject to judicial power." *Sumner Falls Run, LLC*, ___Va. at ___ (quoting *Williams v. Southern Bank of Norfolk*, 203 Va. 657, 662 (1962)). "[S]overeign immunity can bar a

However, Rule 5A:18 of the Rules of the Supreme Court of Virginia bars consideration of appeals not properly preserved at the circuit court:

> No ruling of the [circuit] court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . . A mere statement that the judgment or award is contrary to the law and evidence is not sufficient to preserve the issue for appellate review.

Consequently, this Court may not reverse the circuit court for a reason not raised by the parties below. *Harris v. Howard*, ___ Va. ___ (Apr. 3, 2025). Lytle did not raise his argument relying on Dillon's Rule in the circuit court.[7] Indeed, Lytle concedes in his opening brief that he "never specifically used the term 'Dillon Rule' in the complaint . . . ." Given that Lytle first raises his argument relying on Dillon's Rule in this appeal, the issue is waived.

Finally, we address Lytle's suggestion that if Dillon's Rule does not allow review of the speed monitoring cameras, he is without recourse to challenge the process involved in assessing his violation. Notably, Code § 46.2-882.1(G) requires localities to enforce violations under the statute by executing a summons for the violation. In that process, there are instructions outlining the summoned person's ability to dispute the ticket. Lytle had an opportunity to challenge the validity of the violation which he failed to utilize. Instead, Lytle chose not to pay the fine, nor to seek a court date to challenge the ticket. Lytle's claim that he was denied recourse for disputing the ticket is wholly without merit.

---

declaratory judgment action against the Commonwealth unless the General Assembly has made its intent clear that sovereign immunity is waived and, therefore, a declaratory judgment action can proceed against the Commonwealth." *Id.* at ___; *see Va. Bd. of Medicine v. Va. Physical Therapy Ass'n*, 245 Va. 125 (1993) (analyzing the Virginia Administrative Process Act).

[7] Lytle did argue in his reply to the City's plea in bar that Code § 8.01-184 permitted a plaintiff to ask the court for a determination whether a municipality is complying with existing law, and following the circuit court's ruling. Lytle also objected to "the Court's findings that Sovereign Immunity divests the Court of jurisdiction to adjudicate Plaintiff's claims."

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*